**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                    :
RAYMOND MARTIN,                     :
                                    :    CIVIL ACTION NO. 10-3628 (MLC)
        Plaintiff,                  :
                                    :    MEMORANDUM OPINION
        v.                          :
                                    :
MONROE TOWNSHIP, et al.,            :
                                    :
        Defendants.                 :
_____:
```

**COOPER, District Judge**

The plaintiff, Raymond Martin, commenced this action against the defendants, Monroe Township (the "Township"), Monroe Township Police Department ("MTPD"), Officer Piro of the MTPD ("Piro"), and Officer Burns of the MTPD ("Burns" and together with Piro, the "officers") (collectively, the "defendants"), alleging violations of the New Jersey Law Against Discrimination ("NJLAD"), the New Jersey Civil Rights Act ("NJCRA"), and the First, Fourth, and Fourteenth Amendments of the United States Constitution under 42 U.S.C. § 1983 ("Section 1983").  The defendants move to dismiss the Complaint for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (Dkt. entry no. 4, Mot. to Dismiss.)  The plaintiff opposes the motion.  (Dkt. entry no. 7, Pl. Br.)  The Court decides the motion on the papers without an oral hearing, pursuant to Rule 78(b).  For the foregoing reasons, the motion will be granted in part and denied in part.

**BACKGROUND**

The plaintiff identifies himself as an African-American male and a permanent resident of the United States. (Compl. at ¶¶ 1, 6.) He alleges that on January 29, 2010, he entered a supermarket in the Township to purchase a money order to send to the funerary aid of someone in Jamaica, the plaintiff's country of origin. (Id. at ¶ 5.) After purchasing the money order, the plaintiff left the supermarket and went to a nearby pizza shop, where he bought two pieces of pizza. (Id. at ¶ 8.) The plaintiff then returned to the supermarket, where he bought coffee and sat down in the supermarket's café to eat his pizza. (Id. at ¶ 9.)

While the plaintiff eating his pizza at the café, the officers approached him suddenly. (Id. at ¶ 10.) One officer sat down at the plaintiff's table directly in front of the plaintiff, and the other remained standing next to the seated officer. (Id. at ¶ 11.) One of the officers asked the plaintiff, "What are you doing here?" to which the plaintiff responded, "I'm eating." (Id. at ¶ 12.) That officer asked the plaintiff for identification, and the plaintiff produced his driver's license. (Id. at ¶ 13.) That officer then allegedly remarked, "Raymond is not a black or Jamaican name." (Id. at ¶ 14.) The officer proceeded to instruct the plaintiff that the officers were "calling it in" and told the plaintiff, "We're

2

leaving," referring to both officers and the plaintiff.  (Id. at ¶ 15.)  When the plaintiff asked, "Where are we going?" the other officer responded, "We're taking you downtown . . . to finger print you and lock you up."  (Id. at ¶¶ 16-17.)  The plaintiff states that he asked the officers why, to which they replied that they believed the plaintiff was lying, without specifying what about.  (Id. at ¶ 18.)  The officers then allegedly led the plaintiff out of the supermarket and into their police car, without handcuffing him.  (Id. at ¶ 19.)  The officers continued to question the plaintiff in the car, and when the plaintiff again asked the officers what he had done wrong, the officers allegedly replied, "Shut the [expletive] up."  (Id. at ¶ 21.)

Rather than taking the plaintiff "downtown," the officers took the plaintiff to the residence he shared with one Ms. Allan. (Id. at ¶¶ 22-23.)  The officers allegedly pushed the plaintiff into the residence and followed him inside, despite Ms. Allan's instructions to the officers not to enter.  (Id. at  ¶¶ 24-25.) The officers questioned both the plaintiff and Ms. Allan about what the plaintiff was doing at the supermarket.  (Id. at ¶ 26.) The officers had been in possession of the plaintiff's driver's license since the plaintiff handed it to them during the initial encounter in the supermarket café.  (Id. at ¶ 27.)  The officers returned the driver's license to the plaintiff and left the residence.  (Id. at 28.)

3

The plaintiff contends that the officers had no legitimate cause to take his driver's license, force him into the police car, and enter his residence without permission or a warrant. (Id. at ¶¶ 10, 20, 24-25, 33.)  The plaintiff alleges that this conduct was "obviously racist and egregious" and that he "would not have been unlawfully harassed by the police had he been Caucasian and/or had he not been of Jamaican ethnicity and national extraction."  (Id. at ¶¶ 33-34.)  The plaintiff states that he "suffered acute embarrassment, loss of dignity and the loss of his civil rights" from the encounter with the officers. (Id. at ¶ 37.)  He seeks to impose respondeat superior liability on the Township and the MTPD for the officers' actions.  (Id. at ¶¶ 35-36.)

Count One of the Complaint alleges a violation of the NJLAD on the theory that the officers, as "traveling places of public accommodation," discriminated against the plaintiff.  (Id. at ¶ 39.)  Count Two alleges a violation of the NJCRA on the basis that the defendants "improperly deprived the plaintiff of liberty under color of state law."  (Id. at ¶ 42.)  Count Three alleges a federal cause of action under Section 1983 for "improperly depriv[ing] the plaintiff of liberty," and elsewhere in the Complaint the plaintiff also asserts violations of his First Amendment right to freedom of assembly, his Fourth Amendment right to be free from unreasonable searches and seizures, and his

4

Fourteenth Amendment right to "equal treatment."  (<u>Id.</u> at ¶¶ 32, 45.)  Count Two and Count Three are apparently asserted against the officers in both their official and individual capacities. (<u>Id.</u> at ¶¶ 42, 45.)

The defendants now move to dismiss the Complaint in its entirety, pursuant to Rule 12(b)(6), propounding the following arguments:  (1) the MTPD is not a jural entity subject to suit, (2) the Township is not subject to civil rights claims for punitive damages, (3) the plaintiff's attempt to impose <u>respondeat</u> <u>superior</u> liability on the Township fails as a matter of law, and (4) the claims asserted against the individual officers are redundant to the claims asserted against the Township.  (Dkt. entry no. 4, Defs. Br. at 1.)

## DISCUSSION

## I.   12(b)(6) Motion to Dismiss Standard

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008). At this stage, a "complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949
(2009) (quoting <u>Bell Atl. Co. v. Twombly</u>, 550 U.S. 544, 556
(2007)).  "[W]here the well-pleaded facts do not permit the court
to infer more than the mere possibility of misconduct, the
complaint has alleged--but it has not 'show[n]'--that the
'pleader is entitled to relief.'"  <u>Iqbal</u>, 129 S.Ct. at 1950
(quoting Rule 8(a)(2)).[1]

## II.  Analysis

### A.   Count One - NJLAD Claims

The plaintiff alleges that he "was discriminated against
under the [NJ]LAD in a place of public accommodation by the
police, confined in their conduct by the [NJ]LAD as traveling
places of public accommodation wherever they go."  (Compl. at ¶
39.)  The plaintiff asserts that all defendants are liable under
the NJLAD, because the "Township is responsible for what the
police officers did inasmuch as the interest of the police

---

[1] The Court advises the plaintiff that <u>Conley v. Gibson</u>, 355
U.S. 41, 45-46 (1957), is no longer good law insofar as it
asserts that a complaint should not be dismissed for failure to
state a claim "unless it appears beyond a doubt that the
plaintiff can prove no set of facts in support of his claim which
would entitle him to relief."  (Pl. Br. at 5.)  <u>See</u> <u>Twombly</u>, 550
U.S. at 561-63 (stating that "after puzzling the profession for
50 years, this famous observation has earned its retirement.  The
phrase is best forgotten as an incomplete, negative gloss on an
accepted pleading standard. . . .").

officers and the Monroe Township Police Department are one and the same."  (Id. at ¶ 40.)

The plaintiff relies on N.J.S.A. § 10:5-12, which states:

It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: . . .

f. (1) For any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof, . . . on account of the race, creed, color, national origin, ancestry, . . . or nationality of such person. . . .

N.J.S.A. § 10:5-12(f)(1).  (See Pl. Br. at 5-6.)  We find that the Complaint also implicates N.J.S.A. § 10:5-4, which states that "[a]ll persons shall have the opportunity . . . to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation . . . without discrimination because of race, creed, color, national origin, ancestry . . . [or] nationality. . . ."  N.J.S.A. § 10:5-4.

The defendants argue generally that the MTPD is "an instrumentality of the Township rather than a separate entity subject to be suit in its own right" and therefore not subject to suit.  (Defs. Br. at 7.)  While this is true with regard to the plaintiff's Section 1983 claims, as discussed infra, under New Jersey law, municipal police departments constitute "places of public accommodation" and are subject to suit under the NJLAD.

7

Ptaszynski v. Uwaneme, 853 A.2d 288, 291, 295-97 (N.J. App. Div. 2004) (holding that "a municipal police department and the individual officers qualify as a 'place of public accommodation' to support an LAD claim. . . . As a public entity, by its very nature a police force is a place of public accommodation."), cert. denied, 862 A.2d 56 (N.J. 2004); see also Thomas v. Cnty. of Camden, 902 A.2d 327, 332-334 (N.J. App. Div. 2006) (holding that County of Camden and its executive units are "places of public accommodation" for purposes of the NJLAD).

The plaintiff has alleged that the officers discriminated against him due to his race and/or national origin, as indicated by the plaintiff's allegation that the officers demanded his identification and "remarked 'Raymond is not a black or Jamaican name'" before escorting the plaintiff out of the supermarket and into their police car for ostensibly no reason.  In light of the authority stating that municipal police departments and their officers constitute "places of public accommodation," we find that the plaintiff has stated a claim under the NJLAD against the officers and the MTPD.  Ptaszynski, 853 A.2d at 297.  We find no basis to dismiss the Township at this juncture, as "New Jersey governmental entities are, of course, bound by the LAD.  Their sponsorship of, or conferring of special benefits on, an organization that practices discrimination would be prohibited." Dale v. Boy Scouts of Am., 734 A.2d 1196, 1112 n.7 (N.J. 1999),

rev'd on other grounds, 530 U.S. 640 (2000).  Because the NJLAD
"not only prohibits the owner or operator of a public
accommodation from denying the use of a facility on forbidden
grounds, but . . . also renders unlawful any acts
'discriminat[ing] against any person in the furnishing thereof
. . . .'", the plaintiff's claim that he was accosted for,
essentially, "eating pizza while black" is cognizable under the
NJLAD.  See Turner v. Wong, 832 A.2d 340, 353 (N.J. App. Div.
2003).  The Court will therefore deny the motion insofar as it
seeks dismissal of Count One.

**B.   Count Two and Count Three - Civil Rights Claims**

Both parties address Count Two, which alleges violations of
the NJCRA, and Count Three, which alleges constitutional
violations brought pursuant to Section 1983, together.  (See
Defs. Br. at 13 n.3 ("[The] NJCRA has been closely aligned to
Section 1983 and thus for the same reasons the claims should be
dismissed."); Pl. Br. at 11 ("Because the analysis under both the
. . . NJCRA and . . . Section 1983 is, for purposes of this
motion, nearly identical, we will address those Counts
together.").)  The Court therefore will also consider Count Two
and Count Three (collectively, "civil rights claims") together.
See, e.g., Chapman v. New Jersey, No. 08-4130, 2009 WL 2634888,
at *3 (D.N.J. Aug. 25, 2009) (explaining that the NJCRA and
Section 1983 are construed in "nearly identical" terms).

### 1.   Liability of MTPD

A municipal police department is not a separate entity from the municipality itself under New Jersey law.  N.J.S.A. § 40A:14-118; <u>Adams v. City of Camden</u>, 461 F.Supp.2d 263, 266 (D.N.J. 2006).  Because the MTPD is "merely an administrative arm of" the Township, and "not a separate judicial entity," it cannot be sued under Section 1983.  <u>Padilla v. Twp. of Cherry Hill</u>, 110 Fed.Appx. 272, 278 (3d Cir. 2004).  The plaintiff assents to dismissal of both Count Two and Count Three insofar as they are asserted against the MTPD.  (Pl. Br. at 11.)  Accordingly, we will dismiss these claims with prejudice insofar as they are asserted against the MTPD.

### 2.   Municipal Liability of Township

The plaintiff contends that the civil rights claims should not be dismissed with respect to the Township because he intends to prove "that the conduct of the officers represents custom or practice of the Township or its policy-makers and/or represents a failure on the part of the Township to adequately train its police force in detention of individuals, due process to be afforded to individuals, and anti-discrimination practices." (Pl. Br. at 12.)

Local government units may be sued directly under Section 1983 if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation,

10

or decision officially adopted and promulgated by that body's officers." Monell v. N.Y. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978); see Natale v. Camden Cnty. Corr. Fac., 318 F.3d 575, 583-84 (3d Cir. 2003). Local governmental entities are not liable under Section 1983 solely on a theory of respondeat superior. City of Okla. City v. Tuttle, 471 U.S. 808, 824 n.8 (1985). "To recover against a municipality, a plaintiff must demonstrate that municipal policymakers, acting with deliberate indifference or reckless indifference, established or maintained a policy or well-settled custom which caused a municipal employee to violate plaintiffs' constitutional rights and that such policy or custom was the 'moving force' behind the constitutional tort." Padilla, 110 Fed.Appx. at 278 (quotation and citation omitted).

The plaintiff has not alleged the existence of an official policy of the Township that caused the injuries complained of. Rather, he attempts to impose municipal liability on the Township on the basis that the conduct of the officers was "permitted, ratified and/or overtly or tacitly encouraged and/or negligently prevented by way of inadequate training." (Compl. at ¶ 36.) This allegation is devoid of any suggestion that the Township was deliberately indifferent to the rights of its inhabitants so as to infer causation on a "failure to train" theory; simple or heightened negligence is not enough. See City of Canton v. Harris, 489 U.S. 378, 388 (1989) ("[T]he inadequacy of police

11

training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . . Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."); Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 406-07 (1997) ("That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably.").

Bare assertions that a governmental employer had knowledge of or acquiesced in employees' discriminatory acts are insufficient to impose "supervisory liability" for alleged constitutional violations. Iqbal, 129 S.Ct. at 1949. The Complaint only conclusorily alleges that the Township should be held liable under Section 1983 and the NJCRA based on the officers' conduct. (See Compl. at ¶¶ 35-36.) Accordingly, the civil rights claims will be dismissed as against the Township. Because it is not apparent that amendment would be futile, the plaintiff will be afforded an opportunity to amend the Complaint to cure its deficiencies with respect to municipal liability.

12

However, the Court cautions the plaintiff that he must allege specific facts supporting an inference of municipal liability under the <u>Monell</u> standard if he intends to pursue these claims.

### 3.   Liability of Officers

The plaintiff appears to assert the civil rights claims against the officers in both their individual and official capacities.  (<u>See</u> Compl. at ¶ 42 ("Defendants individually and acting at the behest of the Monroe Township defendants, improperly deprived the plaintiff of liberty under color of state law. . . ."); <u>id.</u> at ¶ 45.)   The defendants argue that the plaintiff's civil rights claims "against the individual Defendants in their official capacity should be dismissed."  (Defs. Br. at 8.)  We agree.   It is well-established that neither a state, nor state officials sued in their official capacities for money damages, are "persons" for purposes of liability under Section 1983, and therefore are not subject to suit.  <u>See</u> <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 66-71 (1989); <u>Melo v. Hafer</u>, 912 F.2d 628, 634-35 (3d Cir. 1990); <u>Brown v. Twp. of Berlin Police Dep't</u>, No. 08-3463, 2010 WL 4193033, at *2-3 (D.N.J. Oct. 20, 2010) (stating that local police departments are not subject to suit as "persons" under Section 1983); <u>accord</u> <u>Egoavil v. City of Irvington</u>, No. 06-1869, 2008 WL 4960444, at *1-2 (D.N.J. Nov. 19, 2008) (dismissing complaint against municipal police officer in officer's official capacity "as

indistinguishable from" the municipality).  Therefore, the civil rights claims will be dismissed with prejudice insofar as they are asserted against the officers in their official capacities.

The defendants' motion to dismiss does not address the civil rights claims insofar as they are brought against the officers in their individual capacities.  To state a Section 1983 claim against the officers in their personal capacities, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  We consider each of the alleged constitutional violations in turn.[2]

### (a)  First Amendment

The Complaint alleges that the officers violated the plaintiff's First Amendment right to freedom of assembly. (Compl. at ¶ 32.)  The First Amendment states in relevant part that "Congress shall make no law . . . abridging . . . the right of the people peaceably to assemble."  U.S. Const. amend. I, cl.

---

[2]  The plaintiff alleges in paragraph 45 of the Complaint that the defendants are liable under Section 1983 for depriving the plaintiff of liberty "under color of federal law."  (Compl. at ¶ 45.)  The Court presumes that this characterization was inadvertent, as Section 1983 liability is properly imposed only on those acting under color of state law.  See, e.g., West v. Atkins, 487 U.S. 42, 48 (1988); cf. Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971) (recognizing federal cause of action for constitutional violations by those acting under color of federal authority).  The Court will order the plaintiff to amend paragraph 45 to properly reflect this first element of a Section 1983 claim.

3.  This guarantee is made applicable to the States through the Due Process Clause of the Fourteenth Amendment.  See DeJonge v. Oregon, 299 U.S. 353, 364 (1937); Douglas v. City of Jeannette, 130 F.2d 652, 655-56 & n.11 (3d Cir. 1942).

The Complaint sets forth no factual allegations outlining the basis for the plaintiff's freedom of assembly claim.  "It takes more to make a First Amendment claim than merely being arrested on space that may be a public forum." Tsitsoulis v. Twp. of Denville, No. 07-4544, 2009 WL 5205276, at *9 (D.N.J. Dec. 23, 2009) (dismissing First Amendment freedom of assembly claim where First Amendment claim appeared "entirely coextensive with the [plaintiff's] Fourth Amendment Claim" and observing that historically, the right to petition the government for a redress of grievances is the primary right guaranteed by the First Amendment, and the right to peaceably assemble is a "subordinate and instrumental right"); see also United States v. Cruikshank, 92 U.S. 542, 552 (1875) ("The right of the people peaceably to assemble for the purpose of petitioning Congress for a redress of grievances, or for any thing else connected with the powers or the duties of the national government, is . . . guaranteed by[] the United States.") (emphasis added).  The Complaint does not suggest that the plaintiff's presence at the supermarket "involved any expressive activity protected by the First Amendment." Tsitsoulis, 2009 WL 5205276, at *10.  Accordingly,

15

we find that the plaintiff fails to state a claim under the First Amendment.  Because it appears that amendment would be futile, we will dismiss this claim with prejudice.

### (b)  Fourth Amendment

The plaintiff alleges that the interaction with the officers violated his Fourth Amendment right to be free from unreasonable searches and seizures.  (Compl. at ¶ 32.)  The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . but upon probable cause. . . ."  U.S. Const. amend. IV.

"The Fourth Amendment's requirement that searches and seizures be founded upon an objective justification governs all seizures of the person, including seizures that involve only a brief detention short of traditional arrest."  United States v. Mendenhall, 446 U.S. 544, 551 (1980) (internal quotation and citation omitted).  While not all interactions between the police and individuals constitute a "seizure" of the person, courts may conclude that a "seizure" has occurred for purposes of the Fourth Amendment when an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen."  Terry v. Ohio, 392 U.S. 1, 20 n.16 (1968).  Where an officer "restrains the freedom of a person to walk away, he has seized that person."  Tennessee v. Garner, 471 U.S. 1, 7 (1985); see

also Terry, 392 U.S. at 16 ("[T]he Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime. . . .").

The plaintiff has alleged that he was seized under the Fourth Amendment in that the officers started questioning him at the supermarket, then took his driver's license and ordered the plaintiff to come with them in their police car.  (Compl. at ¶¶ 10-19.)  See Brown v. Texas, 443 U.S. 47, 50 (1979) ("When the officers detained appellant for the purpose of requiring him to identify himself, they performed a seizure of his person subject to the requirements of the Fourth Amendment.").  He alleges that he had "done nothing of legitimate interest to the police" and that the officers would not tell him why they were questioning him and making him come with them in the police car.  (Compl. at ¶¶ 20-21.)  By retaining the plaintiff's driver's license from the time an officer took it from him at the supermarket until the officers had driven to the plaintiff's residence and entered the residence, the officers made clear to the plaintiff that he was not free to take his leave of the officers, and we find that under the alleged circumstances, a "reasonable person would have believed that he was not free to leave."  (Id. at ¶ 27.) Michigan v. Chesternut, 486 U.S. 567, 573 (1988) (quoting Mendenhall, 446 U.S. at 554).

Taking the facts alleged by the plaintiff as true, the officers' seizure of the plaintiff could be deemed unreasonable because there was no "particularized and objective justification" for doing so in light of the plaintiff's allegation that he was simply eating pizza and drinking coffee at a supermarket café table.  Mendenhall, 446 U.S. at 554; see also Brown, 443 U.S. at 51 ("[T]he Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual.").  The plaintiff has alleged the kind of "arbitrary and oppressive interference by enforcement officials with the privacy and personal security" of the plaintiff that the Fourth Amendment is intended to prevent.  See United States v. Martinez-Fuerte, 428 U.S. 543, 554 (1976).

We conclude that the plaintiff has stated a claim for violation of his Fourth Amendment rights.  The motion will therefore be denied with respect to the civil rights claims insofar as they assert Fourth Amendment violations against the officers in their individual capacities.

### (c)  Fourteenth Amendment

The plaintiff alleges that the officers violated his Fourteenth Amendment rights to "equal treatment" and improperly deprived him of his liberty.  (Compl. at ¶¶ 32, 42, 45.)  The Fourteenth Amendment provides that "[n]o State shall . . .

18

deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Because the Complaint exhibits some ambiguity as to the Fourteenth Amendment claim, we consider the Complaint as alleging equal protection and due process claims.

We address the plaintiff's allusion to "[un]equal treatment" first. The plaintiff essentially argues that his right to equal protection was violated because the officers' conduct "was obviously racist and egregious." (Compl. at ¶ 33.) Generally, to state a claim under the Equal Protection Clause, a plaintiff must show that he received "different treatment from that received by other individuals similarly situated." Shuman v. Penn Manor Sch. Dist., 422 F.3d 141, 151 (3d Cir. 2005); see also Startzell v. City of Phila., 533 F.3d 183, 203 (3d Cir. 2008) ("An essential element of a claim of selective treatment is that the comparable parties were 'similarly situated'. . . . Persons are similarly situated under the Equal Protection Clause when they are alike in 'all relevant aspects.'"). In the racial profiling context, a plaintiff must show that "the actions of . . . officials (1) had a discriminatory effect and (2) were motivated by a discriminatory purpose." Bradley v. United States, 299 F.3d 197, 205 (3d Cir. 2002). Because the plaintiff has not identified any comparator, his equal protection claim

19

fails.  The plaintiff will be granted leave to amend this claim
because it is not evident that amendment would be futile.

Insofar as the Complaint could be construed to assert a
substantive due process claim, such claim fails on its face
because the officers' conduct complained of "is covered by
another specific constitutional provision"--specifically, the
Fourth Amendment.  See King v. Ridley Twp., No. 07-704, 2007 WL
2071871, at *4 (E.D. Pa. July 17, 2007) (holding that plaintiff's
claims of unreasonable seizure must be analyzed under the Fourth
Amendment, "not under the rubric of substantive due process")
(citing Cnty. of Sacramento v. Lewis, 523 U.S. 833, 842-43
(1998)); see also Albright v. Oliver, 510 U.S. 266 (1994).
Because the conduct at issue is covered by the Fourth Amendment,
as addressed supra, a substantive due process claim will not lie.
See Cnty. of Sacramento, 523 U.S. at 843.

The Complaint may be read as alleging a deprivation of
procedural due process.  To state a claim under Section 1983 for
a deprivation of procedural due process rights, "a plaintiff must
allege that (1) he was deprived of an individual interest that is
encompassed within the Fourteenth Amendment's protection of
'life, liberty, or property,' and (2) the procedures available to
him did not provide 'due process of law.'"  Hill v. Borough of
Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006).  In the absence of
more elucidating allegations, we find that any procedural due

20

process claim is also subsumed in the Fourth Amendment inquiry, in that the Due Process Clause of the Fourteenth Amendment provides the mechanism for applying the protections of the Fourth Amendment against the officers.  See Wolf v. Colorado, 338 U.S. 25, 27 (1949) (applying Fourth Amendment's "core" protection of securing one's privacy "against arbitrary intrusion by the police" as "implicit in the concept of ordered liberty" and therefore enforceable against the States through the Due Process Clause of the Fourteenth Amendment), overruled on other grounds, Mapp v. Ohio, 367 U.S. 643, 650-53 (1961).  Thus, we conclude that the plaintiff has not sufficiently alleged facts supporting a standalone claim for denial of procedural due process.  Cf. Damiani v. W. Deptford Twp., No. 07-2884, 2008 WL 656041, at *2-3 (D.N.J. Mar. 7, 2008) ("[T]o the extent that Plaintiff merely utilizes the Fourteenth Amendment to make her Fourth Amendment claim applicable to Defendants as state entities, the Court will permit her to do so.").  As with the equal protection claim, however, the plaintiff will be granted leave to amend this claim if the plaintiff can allege facts supporting a cause of action separate from the conduct at issue in the Fourth Amendment claim.

### C.  Punitive Damages

The defendants seek dismissal of the plaintiff's claims for punitive damages against the Township.  Count One, alleging violations of the NJLAD, is the sole remaining claim against the

Township.  The defendants' arguments supporting dismissal of claims for punitive damages against the Township relate to the Section 1983 and NJCRA claims only.  (Defs. Br. at 9-10.)  We therefore decline to dismiss the claims for punitive damages against the Township.  However, the plaintiff is cautioned that if he reinstates the civil rights claims against the Township in an amended pleading, he should not seek punitive damages in association with those claims, as they are unavailable.  See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) (holding municipality immune from punitive damages under Section 1983); Vandegrift v. Bowen, No. 07-2623, 2009 WL 1913412, at *6 (D.N.J. June 30, 2009) (dismissing claim for punitive damages brought against municipality under NJCRA as not authorized by statute).

**CONCLUSION**

The Court, for the reasons discussed herein, finds that the plaintiff has stated a claim (1) under the NJLAD as against all defendants, and (2) under the NJCRA and Section 1983 as against the officers in their individual capacities for violation of the plaintiff's Fourth Amendment rights.  The motion will therefore be denied as to those claims and defendants.

The Court will grant the motion and dismiss with prejudice the civil rights claims asserted against (1) the MTPD, and (2) the officers in their official capacities.  The Court will grant

22

the motion and dismiss with prejudice the civil rights claims insofar as they can be construed to assert claims against the officers in their individual capacities for alleged violations of the plaintiff's (1) First Amendment right to freedom of assembly, and (2) Fourteenth Amendment right to substantive due process.

The Court will grant the motion and dismiss without prejudice the civil rights claims against (1) the Township, and (2) the officers in their individual capacities for alleged violations of the plaintiff's Fourteenth Amendment rights to equal protection and procedural due process.  The plaintiff will be granted leave to amend these claims.

The Court will issue an appropriate order.


    s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge


Dated:    January 25, 2011